UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

David Lapa,

                Plaintiff,

-against-

JP Morgan Chase Bank, N.A.,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/11/2022

No. 21 Civ. 04737 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff David Lapa ("Plaintiff" or "Lapa") commences this action against his credit card issuer, JP Morgan Chase Bank, N.A. ("Defendant" or "Chase"), asserting breach of contract and implied covenant for the termination of his credit card account and bank accounts. (ECF No. 10.) Plaintiff seeks monetary damages and a permanent injunction compelling Chase to reopen his closed accounts.

    Presently before the Court is Defendant's motions to dismiss the Amended Complaint and to dissolve the Temporary Restraining Order (TRO), respectively pursuant to Federal Rules of Civil Procedure 12(b)(6) and 65(b)(4). (ECF No. 35.) For the following reasons, both motions are GRANTED.

## BACKGROUND

    The allegations in the Amended Complaint ("AC") are deemed true for the purpose of resolving this motion.

    Plaintiff alleges that he has been utilizing Chase's banking services for "almost two decades." (AC ¶ 3, ECF No. 10.) Plaintiff provides that he is not currently in default on any of his obligations to Chase. (AC ¶ 5.) Nor has he ever been in default, throughout the time during which

1

he utilized Chase's banking services. (AC ¶ 6.) Plaintiff regularly relied on Chase's credit card and other banking services. (AC ¶¶ 11, 23)

On May 14, 2021, without any notice to Plaintiff, Chase "summarily terminated" Plaintiff's credit card account, as well as his personal and business accounts. (AC ¶¶ 10-11, 18). Plaintiff asserts that Chase had never previously advised that it was contemplating closing Plaintiff's accounts. (AC ¶ 10.) After the termination of Plaintiff's accounts, Chase notified credit agencies and other third parties that Plaintiff's credit card and bank accounts had been terminated. (AC ¶¶ 12, 20.) On and after May 14, 2021, Plaintiff received numerous notifications that automatic payments to other parties, which Plaintiff authorized and "had been paid for many years" from his Chase accounts, failed. (AC ¶ 21.) Plaintiff asserts that Chase's closing of his accounts "will have severe negative consequences on [Plaintiff's] credit standing."

## PROCEDURAL HISTORY

On May 19, 2021, Plaintiff filed his initial Complaint (IC, ECF No. 1-1) and Application for Preliminary Injunction (ECF No. 1-2) in New York State Supreme Court, Rockland County. Plaintiff's Initial Complaint ("IC") asserts five causes of action, among which is an alleged violation of 15 U.S.C. §1637 that Plaintiff no longer includes in the AC. (IC ¶¶ 20-25.) The state court granted Plaintiff's Order to Show Cause with Temporary Restraining Order ("OSC-TRO", or "TRO"), which ordered Chase to reopen Plaintiff's accounts and fully restore Plaintiff's banking privileges. (ECF No. 1-2.) The TRO is currently in effect.

On May 26, 2021, Chase removed the action to this Court on federal question and diversity grounds. (ECF No. 1.) On July 1, 2021, Plaintiff filed the AC. (ECF No 10.) On July 23, 2021, Chase moved to dismiss the AC without seeking leave of the Court. (ECF Nos. 12-13.) The motion was denied without prejudice for failure to follow this Court's individual rules. (ECF No. 14.)

2

This Court construed Chase's motion as request for leave to file a motion to dismiss the AC, granted leave, and issued a briefing schedule by memorandum endorsement, directing that opposition papers be served on August 25, 2021, reply papers be served on September 9, 2021, and all papers be filed on September 9, 2021. (*Id*.) In violation of the briefing schedule, Chase filed only its reply papers on September 9, 2021. (ECF No. 16-17.)

A few bouts of procedural scuffles ensued, spanning a letter motion by Plaintiff to strike Chase's reply (ECF No. 21), a letter motion by Chase to "clean up the docket" (ECF No. 24), Plaintiff's opposition to Chase's letter motion (ECF No. 25), another denial by this Court of Chase's motion to dismiss for noncompliance (ECF No. 26), a new briefing schedule (*id*), and two more failed attempts by Chase of filing its motion due to filing errors (ECF Nos. 27-34). On November 16, 2021, Chase succeeded in its two-month long endeavor to file the instant motion with accompanying papers. (ECF Nos. 35-37.)  Plaintiff filed his opposition on November 18, 2021 (ECF Nos. 38-39), and Chase its reply on the same day (ECF Nos. 40-41).

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at

555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document *integral* to the complaint. *Id*. (citing *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006)) (emphasis added).

II. **Federal Rule of Civil Procedure 65(b)(4)**

Section 1450 of United States Code Title 28 provides in pertinent part: "Whenever any action is removed from a State court to a district court of the United States [,] . . . [all] injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C.A. § 1450 (West); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 437 (1974); *see also Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585 (LJL), 2022 WL 748249, at *1 (S.D.N.Y. Mar. 11, 2022). Yet "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc.*, 415 U.S. at 437.

Under Rule 65(b)(4), a party who is restrained by an order issued without notice may move on two days' notice to the other side for an order dissolving or modifying the order. Fed. R. Civ. P. 65(b)(4); *see, e.g., Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585 (LJL), 2022 WL 748249, at *1 (S.D.N.Y. Mar. 11, 2022). On a motion to dissolve a temporary restraining order, the party that obtained the order bears the burden of justifying continued injunctive relief. *See Granny Goose Foods, Inc.*, 415 U.S. at 443 ("The burden was on [the applicant for the TRO]

to show that they were entitled to a preliminary injunction, not on [the restrained party] to show that they were not."); *Gardner v. Weisman*, 2006 WL 2423376, at *1 (S.D.N.Y. Aug. 21, 2006) (citing *SG Cowen Sec. Corp. v. Messih*, 2000 WL 663434, at *1 (S.D.N.Y. May 17, 2000)).

## DISCUSSION

### I. Rule 12(b)(6) Motion

Plaintiff alleges in the AC that: (1) Chase closed his credit card account without notice; and (2) Chased closed his personal and business deposit accounts ("deposit accounts") without notice. Plaintiff avers that such closures without notice violated their "agreement," under which Chase "was not permitted to terminate the credit card account without notifying him of its intention before the account was terminated." (AC ¶ 9.) Plaintiff further alleges that the closures constituted a breach of the implied covenant of good faith in the parties' agreement. (AC ¶¶ 18-19.)

Curiously, Plaintiff does not provide this Court with any contracts. Neither does Plaintiff include any specific contractual language in the AC. The only contractual document supplied by Plaintiff throughout this action was a Chase Sapphire Credit Card Member Agreement ("CSCCMA") annexed to Plaintiff's IC and Application for TRO in the state court. (ECF No. 1-2.) However, Plaintiff clarifies that he does not believe the CSCCMA was the agreement which governs his dealings with Chase. Specifically, Plaintiff states in his opposition declaration: "Although I annexed a copy of [CSCCMA] to my affirmation in support of my application for a [TRO], my affirmation clearly stated that I did not possess the agreement which was effective at the time I opened the account, but believed that the agreement to my affirmation it [sic] was a 'standard' agreement. The reason I characterized it as 'standard' is because I saw it 'online'; indeed, the document which I annexed was obtained 'online'." (Pl. Opp. Decl. ¶¶ 5-7.)

As exhibits for the instant motion, Defendant Chase submitted two documents: (1) the same

5

online CSCCMA (ECF No. 36-1) and (2) a Deposit Account Agreement ("DAA," ECF No. 36-2). The DAA states that it is "effective on 4/18/21." Plaintiff argues that neither of these two agreements can be "integral" to AC, because neither are "necessarily the documents" that Plaintiff refers to in AC. (Pl. Opp. at 1-3.)

As a threshold matter, Plaintiff fails to satisfy the pleading standard under Rule 12(b)(6) for his failure to supply this Court with a contract, or at least specific contractual language. To withstand a motion to dismiss, a plaintiff must plead factual content for *each element* of the claim asserted, such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. The court draws such inference considering the context, "its judicial experience [,] and common sense." *Id*. at 662.

Common sense as well as the law prescribe that the determination of a contract breach claim requires, at a minimum, terms of the underlying contract. Under New York law[1], a breach of contract claim is established through proof of "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.,* 632 F.3d 793, 799 (2d Cir.2011). In the instant case, only the first element is sufficiently pled in the AC. Since Plaintiff alleges that he does not have the contract which he believes governs his dealing with Chase, and, at the same time, disputes the authenticity of the contracts proffered by Chase, this Court is left with no contractual terms from which to draw any inference regarding the three remaining elements.

Thus, even accepting all Plaintiff's factual allegations as true, this Court cannot speculate as to the terms of "the agreement" Plaintiff referred to in the AC. *See ATSI Commc'ns, Inc. v.*

---

[1] Both parties applied New York law in their briefing. Defendant Chase states that it "does not waive and expressly reserves the right to request a conflicts of laws analysis and/or to argue that Delaware law applies to Plaintiff's claims relating to his credit card accounts." (Def. Reply at 8, ft. 2.) The Court accordingly reserves judgment on which state's law govern the parties' agreements.

*Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("A complaint must supply factual allegations sufficient to raise a right to relief above the speculative level [to survive a motion to dismiss]."). Stated differently, Plaintiff is responsible for providing this Court with the contractual terms, which he alleges that Chase has violated, for Plaintiff's claims to survive a motion to dismiss. Plaintiff may not attempt to shift this burden to Chase by attacking the applicability and authenticity of the contracts supplied by Chase.

Accordingly, the Court grants Chase's 12(b)(6) motion to dismiss the AC. As ". . . the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (citation omitted), the Court dismisses this action without prejudice and grants Plaintiff leave to amend. Plaintiff is advised that any re-filing would be futile absent the inclusion of the specific contractual terms in his second amended complaint, to which the underlying contractual documents must be attached as exhibits.

II. **Rule 65(b)(4) Motion**

Chase moves to dissolve the TRO restraining it from acting against Plaintiff "including any reporting to any credit agencies or third parties." (Def. Mot. At 9.) Plaintiff completely disregards the matter of TRO in his opposition papers. After due consideration, this Court grants Chase's Rule 65(b)(4) motion since (1) Plaintiff provides no justification for continued injunctive relief; and (2) the instant TRO entered in state court does not comply with the federal requirements of Rule 65(b)(1) and (2).

Upon a state case's removal to federal court, Federal Rules of Civil Procedure govern its course onwards. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. at 441. On a Rule 65(b)(4) motion to dissolve an *ex parte* TRO

issued in state court, the party that obtained the original TRO bears the burden "of justifying continued injunctive relief." *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585 (LJL), 2022 WL 748249, at *3 (S.D.N.Y. Mar. 11, 2022) (quoting *Gardner v. Weisman*, 2006 WL 2423376, at *1 (S.D.N.Y. Aug. 21, 2006)). In his opposition to the instant motion, Plaintiff makes no mention of the TRO, let alone any justifications necessitating continued injunctive relief against Chase.

Moreover, the TRO entered by the state court is deficient under Rule 65 and thus may be deemed improperly issued pursuant to the federal standard. For a federal TRO, Rule 65(b)(1) mandates the inclusion of "specific facts in an affidavit or a verified complaint clearly show that *immediate and irreparable* injury, loss, or damage will result…" Fed. R. Civ. P. 65(b)(1) (emphasis added). Rule 65(b)(2) prescribes that the TRO "must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Fed. R. Civ. P. 65(b)(2). *See Gardner-Alfred*, 2022 WL 748249, at *1; *see also Gardner v. Weisman*, 2006 WL 2423376, at *1 (S.D.N.Y. Aug. 21, 2006).

The instant TRO, issued without notice to and against Chase (ECF No. 1-2), fails to satisfy these Rule 65 requirements. First, while Plaintiff decries Chase's unexpected termination of his accounts as "unreasonable," "outrageous," "inequitable," and "bad faith" (Pl. TRO. Affidavit ¶¶ 22-23, ECF No. 1-2), he alleges no injury that amounts to "immediate and irreparable" harm, *cf.* Fed. R. Civ. P. 65(b)(1), which was deemed by the Second Circuit to be the "single most important prerequisite." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (internal quotation marks omitted) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)).

Second, as the *Gardner-Alfred* court analyzed in depth, 2022 WL 748249, at *3, the state court TRO abides by a more lenient set of standards than that of Rule 65(b)(2). The TRO in the instant case, as the one dissolved by the *Gardner-Alfred* court, does not state "the hour it was issued," "why [the injury] is irreparable," or "why [the TRO] was issued without notice." *Cf.* Fed. R. Civ. P. 65(b)(2); *see Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 127 (E.D.N.Y. 2004) ("The temporary restraining order that was issued . . . without declaring in an affidavit or verified complaint that immediate and irreparable harm would result. . . was plainly in violation of Fed. R. Civ. P. 65(b), and [the TRO] was vacated for the additional reason that it was improperly issued.")

Accordingly, the Court grants Chase's 65(b)(4) motion and dissolves the TRO.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motions (ECF No. 35) to dismiss and to dissolve the TRO. Plaintiff is granted leave to file a Second Amended Complaint (SAC). If Plaintiff chooses to do so, he will have until September 12, 2022, to file the SAC. Defendant is then directed to answer or otherwise respond by October 12, 2022. If Plaintiff fails to file a SAC, any claims dismissed without prejudice by this opinion and order will be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motions at ECF No. 35.

Dated:   August 11, 2022            SO ORDERED:
         White Plains, New York

                                    _____
                                    NELSON S. ROMÁN
                                    United States District Judge

9